IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEA ANN L.,[1] | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )   Civil No. 19-cv-1209-MAB |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
|       Defendant. | ) |

## MEMORANDUM and ORDER

**BEATTY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423.[2]

## Procedural History

This case has a long and complicated history.

Plaintiff applied for DIB and SSI in 2010, alleging disability primarily due to mental impairments beginning on January 1, 2007. That application was denied by an ALJ in July 2012. (Tr. 76-93). The Appeals Council ordered remand. (Tr. 94-98). After further proceedings, the same ALJ again denied the application in June 2014. (Tr. 681-702). Plaintiff sought judicial review. The parties filed a joint motion for remand,

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) (*See* Docs. 10, 15).

1

which was granted in July 2016. (Tr. 728-730).

In the meantime, in August 2015, Plaintiff filed a new application for SSI based on new physical impairments. The remanded application was assigned to a different ALJ. He combined the new application with the remanded application and denied both in September 2017. (Tr. 571-614). Once again, Plaintiff sought judicial review and the case was remanded on a joint motion in August 2018. (Tr. 2034-2035).

The claim was assigned to the same ALJ who had denied it in September 2017. After additional proceedings, he again denied the claim in July 2019. (Tr. 1820-1869). The Appeals Council did not assume jurisdiction and the July 2019 decision is the final agency decision now subject to judicial review. Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ erred in his evaluation of the medical opinions offered by Dr. Kalb and APRN Karaffa.

2. The ALJ failed to comply with the requirements of SSR 13-2p regarding the effects of alcohol as a material factor.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.*, and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, *et seq.*, and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical.  Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.   Most citations herein are to the DIB regulations out of convenience.

2

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant

3

evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does *not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### **The Decision of the ALJ**

In the July 2019 decision, the ALJ followed the five-step analytical framework described above. He determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date of January 1, 2007. She was insured for DIB only through December 31, 2010. She was 41 years old on the alleged onset date.

The ALJ found that, beginning on the alleged onset date, Plaintiff had severe impairments of schizoaffective disorder; dysthymic disorder; panic disorder with agoraphobia; and alcohol dependence. As of January 1, 2012, her alcohol dependence had ended. Further, as of August 27, 2015 (the date of her later SSI application), Plaintiff had the additional severe impairments of hepatitis C; COPD; and hypertension. Beginning on or about February 11, 2019, the claimant had the additional severe impairment of diabetes.

The ALJ found that, prior to January 1, 2012, Plaintiff's impairments, including substance abuse disorder, met the requirements of Listings 12.03 (schizophrenia

4

spectrum and other psychotic disorders), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety related disorders). However, she was not disabled because drug addiction and/or alcoholism (DAA) was material and, in the absence of DAA, her other impairments would not have been severe enough to meet a Listing. He also found that, after Plaintiff stopped substance abuse as of January 1, 2012, her mental impairments were not severe enough to meet a Listing.

The ALJ found that Plaintiff had the RFC to do work at all exertional levels but with the following nonexertional limitations: she could only understand, remember, and carry out rote and routine instructions or tasks that require the exercise of little independent judgment or decision-making and that could be learned from a short demonstration up to 30 days; work in a stable setting where there is little change and change, where necessary, is introduced gradually; supervisors are on-site, readily available, and make periodic checks on workers; task-focused interaction with supervisors; no work wherein she is unsupervised for the vast majority of the workday; no interactions with the general public; no close coordination with co-workers; and only occasional work-related contact and interaction with co-workers.

For the period beginning on or about May 7, 2013 (when she developed severe physical impairments), the ALJ found Plaintiff was limited to medium exertion work with some physical limitations and mental limitations of rote tasks that require the exercise of little independent judgment or decision making and can be learned from a short demonstration within 30 days; stable setting where there is minimal change and change, where necessary, is introduced gradually; no work in an environment that is

5

stringently production or quota-based and no fast-paced assembly line type of work; only production requirements that allow her to sustain a flexible and goal-oriented pace; no interaction with the general public; no close coordination with coworkers; only occasional task-focused interaction with her coworkers; task-focused interaction with her supervisor.; direction and re-direction at points, but not constant oversight and interaction with her supervisor.

Plaintiff had no past relevant work. Based on the testimony of a vocational expert, the ALJ found that Plaintiff was not disabled because, if she stopped substance abuse, she was able to do jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff, which relate only to her mental impairments.

1.   **APRN Karaffa's Records**

Melissa Karaffa, APRN-CNP, a psychiatric nurse, saw Plaintiff for the first time in November 2012. Plaintiff had a history of heavy daily use of alcohol as well as past daily use of methamphetamine. She was still drinking once or twice a month. She had been hearing voices since 2000. She was depressed. On exam, her mood was depressed and anxious and her affect was abnormal and blunted. Her speech was abnormal, and she maintained constant eye contact. Nurse Karaffa diagnosed schizoaffective disorder and polysubstance disorder in remission. She prescribed Latuda and Celexa. (Tr. 503-507). Trazodone was added the next month. (Tr. 510).

Nurse Karaffa saw Plaintiff five time in 2013 (Tr. 515-524, 551-555, 563-570); three times in 2014 (Tr. 559-562, 1662-1675); five times in 2015 (Tr. 1686-1745); four times in 2016 (Tr. 1746-1791); three times in 2017 (Tr. 1791-1819, 2384-2400); three times in 2018 (Tr. 2401-2458); and once in January 2019 (Tr. 2459-2475). Her symptoms waxed and waned, and her medications were adjusted. She was "very depressed" in November 2017 and continued to hear voices. Nurse Karaffa prescribed Geodon, Vistaril, and Trintellix. In January 2018, Plaintiff said that Trintellix made her mean; she beat up her roommate and spent three days in jail. Lexapro was prescribed. In March 2018, she was sleeping 18 or 19 hours a day and moving her tongue constantly. She was not hearing voices but heard a radio all the time. Her medications were again adjusted. In August 2018, the voices had returned. A new medication, Saphris, was started. At the last visit in January 2019, she was still hearing voices and felt like bugs were crawling on her. Nurse Karaffa added Zoloft to her medications.

### 2. APRN Karaffa's Opinion

In July 2016, APRN Karaffa completed a Mental Functional Capacity Report form, designated Exhibit B40F at the agency level. She had seen Plaintiff as recently as late April 2016. She said that Plaintiff had diagnoses of schizoaffective disorder, depressed type; episodic alcohol use; and stimulant use disorder in remission. She stated that Plaintiff heard voices which were disturbing and which "riot" in her head. She was paranoid and could not go into public places without significant anxiety. Her depressed symptoms included low mood, crying, sleep disturbance, passive suicidal thoughts, variable appetite, and isolative behavior. APRN Karaffa indicated that Plaintiff had

7

marked limitations in maintaining social functioning and moderate limitations in maintaining concentration, persistence, or pace. She indicated that Plaintiff had experienced episodes of decompensation on three specific dates in 2015. These episodes had resulted in the need to increase treatment and the need for Plaintiff to be in a less stressful situation, but not the need for hospitalization. APRN Karaffa opined that Plaintiff would be likely to miss two to three days of work per month. Lastly, she indicated that Plaintiff's limitations would not change if she were to stop all use of alcohol or other substances. (Tr. 1644-1646).

In July 2017 and November 2018, APRN Karaffa stated that there were no changes in the opinions she expressed in the July 2016 report. (Tr. 1648-1649, 2314-2315).

### 3. Dr. Kalb's Opinion

In October 2018, the ALJ requested that Elizabeth Kalb, Ph.D., review the record and assess Plaintiff's mental RFC. Dr. Kalb is not an agency employee. She provides such reviews under a contract with the agency. (Tr. 2221).

Dr. Kalb answered a "Medical Interrogatory" and completed a Mental RFC Assessment in October 2018. (Tr. 2223-2244). She indicated that her RFC assessment reflected her opinion as to Plaintiff's limitations when she was abstinent, *i.e.*, not using alcohol or drugs. (Tr. 2237). She summarized Plaintiff's treatment with APRN Karaffa and stated that Plaintiff's symptoms "best fit the diagnosis of Schizoaffective Disorder" and that her depressive symptoms fall under the depressive component of that diagnosis. (Tr. 2242-2243).

Dr. Kalb indicated that Plaintiff had moderate limitations in understanding and

8

carrying out complex instructions and should be limited to simple, repetitive tasks. She indicated that Plaintiff had moderate limitations in interacting with the public, co-workers, and supervisors. (Tr. 2239-2240).

The third question asked, "Are any other capabilities (such as the ability to concentrate, persist, or maintain pace and the ability to adapt or manage oneself) affected by the impairment?" Dr. Kalb answered yes, and wrote "Agree 40F – Given presentation in treatment with ups and downs while compliant to trt [treatment] could be absent 2-3 x a month." (Tr. 2240).

In her narrative remarks, Dr. Kalb wrote "She does cite having good days and bad days and the most recent treatment records echo this where she has struggled with both medical and interprofessional issues."[4] She cited Exhibit 42F, APRN Karaffa's treatment records. (Tr. 2244).

## Analysis

The Social Security Act prohibits the payment of disability benefits "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In order to determine whether alcoholism or drug addiction is a contributing factor, the ALJ is to determine whether the claimant would still be disabled if she stopped using alcohol and/or drugs. 20 C.F.R. § 404.1535; SSR 13-2p, 2013 WL 621536, at *4. In this case, that determination was straightforward because the ALJ found that Plaintiff had in fact stopped using alcohol and drugs.

---

[4] It is unclear what Dr. Kalb meant by "interprofessional issues." She may have meant "interpersonal issues."

9

Plaintiff argues that the ALJ erred in determining that her symptoms improved so much after she stopped using alcohol that she was no longer disabled. Her primary argument is that the ALJ erred in weighing the opinions of APRN Karaffa and Dr. Kalb. The Court agrees.

Under the appliable regulation, APRN Karaffa was not an "acceptable medical source." 20 C.F.R. § 404.1513(a).[5] Her report does not qualify as a "treating source" opinion and is not entitled to any special weight under § 404.1527(c). SSR 06-03p, 2006 WL 2329939, at *2. Still, the ALJ was required to consider her opinion. The ALJ is required to consider "all relevant evidence" and may, as appropriate, consider the factors set forth in § 404.1527(c) in the process of weighing the opinions of nonacceptable medical sources. SSR 06-3p, at * 4-5.

The ALJ acknowledged that the Appeals Council remand order was critical of his consideration of APRN Karaffa's opinion in his earlier decision, and that some of its observations "are well-taken." However, he took issue with the Appeals Council's statements about his consideration of her opinion that Plaintiff had episodes of decompensation, stating "[F]or some reason, the Appeals Council indicated, seemingly gratuitously, that the undersigned failed to give adequate consideration to the dates that Ms. Karaffa cited." (Tr. 1848).

The ALJ gave little weight to APRN Karaffa's opinion in the decision at issue. Indeed, he described it as "misleading, particularly with regard to the issue of episode[s] of decompensations.[sic]" (Tr. 1849).

---

[5] Under the revised regulations applicable to applications filed on or after March 27, 2017, an advanced practice registered nurse is considered an acceptable medical source. 20 C.F.R. § 404.1502(a)(8).

The ALJ thought that there was an inconsistency between APRN Karaffa's opinion that Plaintiff suffered episodes of decompensation on three specific dates and her opinion that Plaintiff did not need to be hospitalized or placed in a more structured setting. He thought that this inconsistency undercut her opinion that Plaintiff suffered episodes of decompensation and that this, "in turn, casts some doubt on the reliability of her report." (Tr. 1849).

Whether the claimant suffered episodes of decompensation was a consideration in assessing the "B criteria" of the mental health listings before the listings were revised effective January 17, 2017. 81 Fed. Reg. 66137 (2016). Obviously, the prior "B criteria" were in effect for much of the time that Plaintiff's application was pending, and APRN Karaffa was asked whether Plaintiff suffered episodes of decompensation.

The prior "B criteria" defined episodes of decompensation:

> Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 §12.0(C)(4)92016).

The ALJ here thought that the need to be hospitalized or placed in a more structured setting is "one of the primary considerations when assessing whether [an] episode of decompensation has occurred." Accordingly, he saw a fatal flaw in APRN

11

Karaffa's opinion that Plaintiff suffered repeated episodes of decompensation but did not require hospitalization. (Tr. 1849).

The ALJ was wrong. The definition, set forth above, does not require hospitalization or placement in a structured setting. The Seventh Circuit has held that the agency's definition of episode of decompensation does not require evidence of need for placement in a hospital or other structured setting:

> An incident—such as hospitalization or placement in a halfway house—that signals the need for a more structured psychological support system would qualify as an episode of decompensation, 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00, but so would many other scenarios. The listing recognizes that an episode may be inferred from medical records showing a significant alteration in medication, see 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00.

*Larson v. Astrue*, 615 F.3d 744, 750 (7th Cir. 2010). *See also, Yurt v. Colvin*, 758 F.3d 850, 861 (7th Cir. 2014) ("[H]ospitalizations are not the only way a claimant can satisfy the decompensation requirement.").

The ALJ's conclusion that APRN Karaffa's opinion was misleading and entitled to little weight was erroneous because it was based on an incorrect understanding of the definition of episode of decompensation.

The ALJ also said that "perhaps most importantly," he rejected APRN Karaffa's opinion because it was inconsistent with Dr. Kalb's assessment. (Tr. 1849). However, the two opinions were consistent in one important respect, and ALJ erred in rejecting that part of Dr. Kalb's assessment.

APRN Karaffa said that she could anticipate that Plaintiff would miss two to three days of work a month because of her impairments or treatments. (Tr. 1646). Dr. Kalb wrote that she agreed with Exhibit 40F (APRN Karaffa's opinion) about Plaintiff being

12

absent two to three times a month. (Tr. 2240).

At the evidentiary hearing in April 2019, a vocational expert testified that, for unskilled jobs, "the usual tolerance is no more than one day of absenteeism per work month." (Tr. 1884). A different vocational expert offered the same testimony at an earlier hearing in July 2017. (Tr. 1952-1963). Thus, in effect, Dr. Kalb opined that Plaintiff was disabled. Dr. Kalb was retained by the agency. It is not likely that an agency doctor will "exaggerate an applicant's disability." *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013).

The ALJ said that he rejected Dr. Kalb's opinion that Plaintiff could miss two to three days of work per month because "she has not substantiated what she means by the claimant's 'ups and downs' that could result in absences from work." He said that Dr. Kalb referred *only* to Exhibit B40F, APRN Karaffa's opinion, but that document does not discuss Plaintiff's ups and downs in any detail. (Tr. 1848).

The ALJ's rationale is based on a misreading of Dr. Kalb's report. Dr. Kalb said she agreed with Exhibit 40F that Plaintiff could be absent two to three days a month, not that Exhibit 40F was the basis for her conclusion that Plaintiff had ups and downs. Dr. Kalb referred to Plaintiff's "presentation in treatment with ups and downs." Dr Kalb stated that she had reviewed the evidence furnished to her by the agency and her narrative notes reflect that she reviewed APRN Karaffa's treatment notes. (Tr. 2233, 2242-2243). In her narrative remarks, Dr. Kalb wrote "She does cite having good days and bad days and the most recent treatment records echo this where she has struggled with both medical and interprofessional issues." She cited Exhibit 42F, APRN Karaffa's treatment records. (Tr. 2244). It was error for the ALJ to reject this part of Dr. Kalb's

13

opinion which explicitly agreed with APRN Karaffa's opinion on a faulty basis. He compounded the error by rejecting APRN Karaffa's opinion because it was not consistent with Dr. Kalb's opinion when, in fact, both agree that Plaintiff is likely to miss more work than an employer will tolerate.

The ALJ's decision was the product of significant errors. Plaintiff asks the Court to award benefits rather than remand yet again. The Court must refuse that request. "[A]n award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). This is not the "extraordinary" case where the record can lead to only one supportable conclusion, as in *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020).

The Court urges the Commissioner to expedite consideration of this case on remand.

## Conclusion

The Commissioner's final decision denying Plaintiff's application for disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATE: October 26, 2020**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**